### Gerald LEVINE, Plaintiff,

v.

### METAL RECOVERY TECHNOLOGIES, INC., formerly known as Malvy Technology, Inc., Jack Alexander, Michael Lucas, Michael Rabhi, Gary Salter, SGA Goldstar Research, Inc., Barron Chase Securities, Inc., and Lawrence Turrell, Defendants.

No. Civ.A. 96-525-JJF.

United States District Court,
D. Delaware.

June 26, 1998.

---

Norman M. Monhait, Rosenthal, Monhait, Gross & Goddess, Wilmington, DE; David B. Zlotnick, Law Offices of David B. Zlotnick, Tuscon, AZ, Donald B. Lewis, Law Offices of Donald B. Lewis, Bala Cynwyd, PA, for plaintiff.

Raymond L. Robin of Olle, Macaulay & Zorrilla, P.A., Miami, FL, for defendant Gary Salter.

## MEMORANDUM OPINION

FARNAN, Chief Judge.

Presently before the Court is Defendant Gary Salter's Motion To Dismiss The Amended Class Action Complaint (D.I.75) pursuant to Federal Rules of Civil Procedure ("FRCP") 9(b) and 12(b)(6). The Amended Complaint alleges that Defendant Salter engaged in a scheme and conspiracy to defraud that involved three basic components:

(1) certain Defendants, including Salter, issued statements regarding Malvy Technology, Inc.'s ("Malvy")[1] stage of development, principal product, and prospects which misrepresented and omitted material facts and had no factual basis;

(2) Defendant Salter in conspiracy with other Defendants bribed securities brokers and traders to induce them to aggressively sell Malvy stock to unsuspecting members of the investing public, and thereby, inflate the market price for Malvy stock; and

(3) Defendants laundered large amounts of unregistered stock into the United States market, in large part through Salter's accounts, thereby reaping substantial personal profits. (D.I. 65). Specific to Salter,[2] the Amended Complaint alleges that he violated Rule 10b–5 and Section 10(b) of the Securities Exchange Act of 1934 by conspiring with Defendants Lucas and Rabhi to manipulate and inflate the price of Malvy stock by means of false and misleading public statements and bribes to stock traders and brokers. (D.I. 65, para.15).

### A. FRCP 9(b) Claim

Salter's first argument in support of dismissal is that the Amended Complaint fails to allege fraud in compliance with FRCP 9(b), which requires that in pleading claims of fraud, "the circumstances constituting fraud ... shall be stated with particularity." With regard to the claim that Salter caused press releases and investment reports to be issued, Salter contends that Plaintiff does not specifically allege, as required by the Private Securities Litigation Reform Act of 1995, (1) each statement that was allegedly made by Salter which Plaintiff claims to be misleading; or (2) the reason why such statement is misleading. (D.I. 76 at 3). Salter also argues that the bare allegations that he bribed stock brokers to stimulate trading activity and inflate the price of the Malvy stock do not satisfy the specificity requirements necessary to properly plead fraud. (D.I. 76 at 3–4).

Rule 9(b) requires a plaintiff to plead (1) a specific false representation of material fact; (2) knowledge by the person who made it of its falsity; (3) ignorance of its falsity by the person to whom it was made; (4) the intention that it should be acted upon; and (5) that the plaintiff acted upon it to his

---

1. Defendant Metal Recovery Technologies, Inc. was formerly known as Malvy Technology, Inc.

2. Gary Salter was a stock promoter who worked through a Florida company called Corporate Asset Management, Inc. ("CAM").

damage. *Shapiro v. UJB Financial Corp.*, 964 F.2d 272, 284 (3d Cir.1992) (citation omitted). In reviewing a pleading in a case involving corporate fraud, the Court of Appeals for the Third Circuit has emphasized that "plaintiffs cannot be expected to have personal knowledge of the details of corporate internal affairs," particularly when the factual information is within the defendant's knowledge or control. *Id.* at 285 (quotation omitted). All that is required is that the complaint place the defendants on notice of the precise misconduct with which they are charged. *Gurfein v. Sovereign Group*, 826 F.Supp. 890, 906 (E.D.Pa.1993). As this Court has noted previously, the requirement of particularity does not require " 'an exhaustive cataloging of facts but only sufficient factual specificity to provide assurance that plaintiff has investigated ... the alleged fraud and reasonably believes that a wrong has occurred.' " *In re ML–Lee Acquisition Fund II, L.P. and ML–Lee Acquisition Fund (Retirement Accounts) II, L.P. Securities Litigation*, 848 F.Supp. 527, 555 (D.Del. 1994) (quotations omitted).

█ Here, the Amended Complaint identifies with particularity the participants in the fraud (specifying Salter's role), the nature of the fraud, where and when the fraud occurred, and the means that Defendants used to perpetrate it. As to the bribery claim, the Amended Complaint identifies four of the persons whom Salter bribed, states that three of them have pled guilty to accepting the bribes, and describes the sworn testimony of Salter's former assistant that Salter bribed approximately 100 brokers across the country to induce them to sell Malvy stock to their clients. (D.I. 65, para. 41). Moreover, Plaintiff alleges that Salter paid undisclosed bribes to 100 brokers in the range of 15–20% of any Malvy stock sold, in response to Salter's argument that these bribes were mere commissions. (D.I. 65, para. 41). The Court concludes that the Amended Complaint alleges with sufficient particularity that Salter engaged in a bribery scheme.

█ Similarly, the Court is persuaded that Plaintiff has adequately alleged Salter's misrepresentations relating to Malvy. The Amended Complaint specifically describes the Focus Reports and Press Release issued by Salter's company, CAM, and it further details those statements which were allegedly misleading. (D.I. 65, para. 45, 47–48, 69). Moreover, Salter's knowledge of the misrepresentation is substantiated by his alleged bribery activities and his undisclosed sales of over 1.6 million shares of unregistered Malvy stock. Consequently, the Court concludes that Plaintiff's Amended Complaint adequately pleads Salter's misrepresentations in sufficient detail.

## B. *FRCP 12(b)(6) Claim*

█ Salter contends that the Amended Complaint fails to plead the requisite elements to state a cause of action under Section 10(b) of the Securities Exchange Act of 1934. Under Section 10(b), a plaintiff must show that (1) the sale or purchase of a security was accompanied by a misrepresentation or omission of a material fact; (2) the defendant acted with scienter; (3) the plaintiff justifiably relied on such misrepresentation in connection with the purchase or sale of a security; and (4) the plaintiff suffered damage as a result of the misrepresentation or omission. *See Sowell v. Butcher & Singer, Inc.*, 926 F.2d 289, 296 (3d Cir.1991) (citations omitted).

█ Specifically, Salter contends that Plaintiff has not alleged that he acted with scienter, that he had any reason to know of the alleged falsity of the statements made by the Malvy insiders. The Court must reject this argument in view of the specific allegations of bribery and misrepresentation and the substantial corroborating detail provided in the Amended Complaint. Federal Rule of Civil Procedure 9(b) provides that "[m]alice, intent, knowledge and other condition of mind may be averred generally." The Court concludes that Plaintiff's allegations that Salter bribed approximately 100 brokers to push Malvy stock on the investing public and that he knowingly laundered over 1.6 million shares of unregistered stock is sufficient to allege scienter. (D.I. 65, para. 41–42). The nature of bribery is sufficient in itself to establish a finding of knowledge. *United States v. Hanlon*, 548 F.2d 1096, 1099 (2d Cir.1977).

█ Additionally, with regard to Plaintiff's claims against Salter for misleading statements he issued through CAM, the

Court finds that the Amended Complaint sufficiently alleges that Salter was aware of the fraudulent nature of the statements. This is supported by the Focus Reports and Press Release in which Salter failed to disclose his extraordinary holdings of over 1.6 million shares of Malvy stock. (D.I. 65, para. 45, 47–48, 69). Furthermore, scienter can be pleaded by alleging facts that demonstrate both motive and opportunity to commit fraud. *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1130–31 (2d Cir.1994). Motive can be shown by the presence of "concrete benefits" that could be realized through fraud. *Id.* Opportunity would entail the means and likely prospect of achieving concrete benefits by the means alleged. *Id.* at 1130.

In this case, the Amended Complaint describes Salter's motive to deliberately mislead Malvy investors, for the purpose of inflating the price of the stock and thereby, reap the benefits in profits from his personal sales of some 1.6 million shares of unregistered stock. Further, courts have recognized that extensive trading in securities prior to disclosure of adverse negative information raises an inference of scienter. *See, e.g., Goldman v. Belden*, 754 F.2d 1059, 1070 (2d Cir.1985). The Court is persuaded that the Amended Complaint more than sufficiently alleges Salter's scienter.

In addition, Salter claims that the Amended Complaint does no more than allege that he was aiding and abetting which is not actionable under Section 10(b). In *Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 191, 114 S.Ct. 1439, 128 L.Ed.2d 119 (1994), the United States Supreme Court held that there was no cause of action for aiding and abetting under Section 10(b), however, the Supreme Court acknowledged that "secondary actors" in the securities market may be held liable if they employ a manipulative device. As the Court explained:

> The absence of § 10(b) aiding and abetting liability does not mean that secondary actors in the securities markets are always free from liability under the securities Acts. Any person or entity, including a lawyer, accountant, or bank, who employs a manipulative device or makes a material misstatement (or omission) on which a purchaser or seller of securities relies may be liable as a primary violator under 10b–5, assuming *all* of the requirements for primary liability under Rule 10b–5 are met. *Id.*

The Court concludes that Plaintiff has alleged with sufficient particularity that Salter orchestrated and directly participated in a conspiratorial scheme that operated as a fraud on the market. Such allegations state a claim for direct liability under Section 10(b), not merely aiding and abetting. Numerous undisclosed bribes to induce brokers to aggressively sell a stock constitute a manipulative and deceptive act. *See United States v. Hanlon*, 548 F.2d 1096, 1099 (2d Cir.1977). Courts have found that a primary liability claim is presented if "a party significantly participated in the alleged manipulative or deceptive scheme." *Primavera Familienstiftung v. Askin*, Civ. A. No. 8905, 1996 WL 494904, at *7 (S.D.N.Y. August 30, 1996). As detailed above, the Court finds that the Amended Complaint adequately alleges that Salter participated in a fraudulent scheme for his own personal benefit.

For the reasons discussed, the Court will deny Defendant Gary Salter's Motion To Dismiss The Amended Class Action Complaint (D.I. 75). An appropriate Order will be entered.